GREGORY J. NEWMAN (SBN 169057)
E-mail: gnewman@selmanbreitman.com
CHITAL P. SELVAKUMAR (SBN 239461)
E-mail: cselvakumar@selmanbreitman.com
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA  90025
Telephone:      (310) 445-0800
Facsimile:      (310) 473-2525

Attorneys for Defendant
ARCH SPECIALTY INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCMILLIN CONSTRUCTION SERVICES, L.P., a California Limited Partnership; MCMILLIN MANAGEMENT SERVICES, L.P., a California Limited Partnership; and CORKY MCMILLIN CONSTRUCTION SERVICES, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ARCH SPECIALTY INSURANCE COMPANY; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY; AMERICAN SAFETY INSURANCE COMPANY; ILLINOIS UNION INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; ST. PAUL MERCURY INSURANCE COMPANY; and DOES 1 through 100 inclusive,<br><br>Defendants. | CASE NO. 10 CV 2592 DMS (MDD)<br><br>**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date: March 23, 2012<br>Time: 1:30 p.m.<br>Courtroom: 10<br>Judge: Hon. Dana M. Sabraw<br><br>Complaint Filed: November 17, 2010<br>Trial Date: June 5, 2012 |

Selman Breitman LLP
ATTORNEYS AT LAW

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

518250.1  763.30213

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................. 1

    A. The Underlying Action ........................................................................ 1

        1. The BSI Subcontracts.................................................................. 1

        2. The Complaint............................................................................. 2

        3. Tender & Response ..................................................................... 3

        4. Current Status.............................................................................. 3

    B. The Present Coverage Action.............................................................. 4

    C. The Arch Policies................................................................................ 4

        1. Policy Number 72RGP1408900 (7/15/03 – 7/15/04) ................. 4

            a. Self-Insured Retention ...................................................... 4

            b. The Blanket Additional Insured Endorsement................... 6

        2. Policy Number GAP0000646-00 (7/15/04 – 7/15/05)................. 6

        3. Products-Completed Operations Hazard – Both Policies ............ 6

        4. Exclusions j(5) and j(6) – Both Policies ..................................... 7

III. LEGAL STANDARDS.................................................................................. 8

    A. This Court Has Authority To Grant A Motion For Summary Judgment, Or In The Alternative, Summary Adjudication.................................... 8

    B. Policy Interpretation Is A Question Of Law Determined By A Court.................. 8

IV. ARGUMENT ................................................................................................ 9

    A. The McMillin Entities Are Not Entitled To Coverage Under The Additional Insured Endorsements ........................................................ 9

        1. The Homeowners Do Not Allege "Liability Arising Out Of" BSI's Operations – "Ongoing" Or Otherwise ............................. 9

        2. The Ongoing Operations Limitation Precludes Coverage For Completed Operations Claims .................................................... 12

        3. Exclusions J(5) and J(6) Preclude Coverage For Property Damage During Ongoing Operations ......................................... 17

    B. BSI Has Not Satisfied The Self-Insured Retention For Policy Number 72RGP1408900 (7/15/03 – 7/15/04)................................................... 18

    C. A Bad Faith Cause Of Action Cannot Be Maintained Without A Breach Of Contract. ....................................................................................... 18

    D. Though The Court Stayed The Indemnity Issues, A Determination That Arch Has No Duty to Defend Eliminates An Alleged Duty To Indemnify .......... 19

V. CONCLUSION.............................................................................................. 19

i

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

# TABLE OF AUTHORITIES

Page

FEDERAL CASES

*California v. Campbell* (9th Cir. 1998)138 F.3d 772……………………………………………….8

*Celotex Corp. v. Catrell* (1986) 477 U.S. 317……………………………………………………8

*Devereaux v. Abbey* (9th Cir. 2001) 263 F.3d 1070……………………………………………...8

*Sebastian Intern., Inc. v. Russolillo* (C.D. Cal. 2001) 151 F. Supp. 2d 1215……………………8

*Tri-Star Theme Builders, Inc. v. One Beacon Ins. Co.*
((9th Cir. (Ariz.) 2011) 2011 WL 1361468………………………………………………12, 16

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D. Cal. 2001) 178 F. Supp. 2d 1099………..8

STATE CASES

*Acceptance Ins. Co. v. Syufy Enterprises, et al.* (1999) 69 Cal.App.4th 321…………………….11

*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807………………………………………….8-9

*Baroco West, Inc. v. Scottsdale Ins. Co.* (2002) 110 Cal.App.4th 96……………………………17

*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1……………………..8

*Certain Underwriters of Lloyd's, London v. Superior Court* (2001) 24 Cal.4th 945……………...19

*Clarendon America Ins. Co. v. General Security Indem. Co.*
(2011)193 Cal.App.4th 1311…………………………………………………………...17-18

*Forecast Homes, Inc. v. Steadfast Ins. Co.* (2010) 181 Cal.App.4th 1466…………………….....18

*Garcia v. Truck Ins. Exch.* (1984) 36 Cal.3d 426………………………………………………..8

*General Star Indem. Co. v. Sup. Ct.* (1996) 47 Cal.App.4th 1586……………………………...18

*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106………………………………10-11

*Hartford Insurance Co. v. Ohio Casualty Insurance Co.*
(Wash. 2008) 145 Wash.App. 765…………………………………………………….....14-16

*Highlands Ins. Co. v. Schrillo Co.* (1986) 181 Cal.App.3d 766…………………………………16

*Jones v. Jacobson* (2011) 195 Cal.App.4th 1………………………………………………….....16

*Kwok v. Transnation Title Ins. Co.* (2009) 170 Cal.App.4th 1562……………………………….9

*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136………………………………………..18

*Maryland Casualty Co. v. Imperial Contracting Co., Inc.* (1989) 212 Cal.App.3d 712…….........17

ii

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

**TABLE OF AUTHORITIES**

Page

*Monticello Ins. Co. v. Essex Ins. Co.* (2008)162 Cal.App.4th 1376................................9-11

*Pardee Construction Co. v. Insurance Company of the West*
(2000) 77 Cal.App.4th 1340.........................................................................12,13,16

*Powerine Oil Co., Inc. v. Superior Court*  (2005) 37 Cal.4th 377..................................15-16

*St. Paul Fire & Marine Ins. Co. v. American Surplus Lines Ins. Co.*
(2002)101 Cal.App.4th 1038........................................................................11

*Travelers Casualty And Surety Co. v. Employers Insurance Of Wausau*
(2005)130 Cal.App.4th 99.........................................................................16

*Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1.......................................................8

*Weitz Co., LLC v. Mid-Century Insurance* (Colo. Ct. App. 2007) 181 P.3d 309.............13, 14, 16

*Whittaker Corp. v. Allianz Underwriters, Inc.* (1992) 11 Cal. App. 4th 1236..........................9

<u>FEDERAL STATUTES</u>

Federal Rules of Civil Procedure, Rule 56...............................................................8

<u>STATE STATUTES</u>

California Civil Code, §1636..........................................................................8

California Civil Code, §1639..........................................................................9

California Civil Code, §1644..........................................................................9

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

## I.    **INTRODUCTION**

Arch Specialty Insurance Company ("Arch") issued two commercial general liability policies to Builders Showcase Interiors, Inc. ("BSI"), which contain additional insured endorsements that provide coverage to qualifying entities for liability "arising out of" BSI's "ongoing operations." Plaintiffs McMillin Construction Services, L.P., McMillin Management Services, L.P. and Corky McMillin Construction Services, Inc. (collectively "McMillin") contend that they qualify as additional insureds under the policies, such that Arch should defend McMillin against an underlying construction defect action. Arch does not have a duty to defend McMillin under the Policies for several reasons. First, the homeowners in the underlying action do not allege any defects or property damage "arising out of" BSI's operations **at all** – ongoing or otherwise, such that there is no causal connection that triggers a defense obligation. Second, the alleged construction defects are to homes that were completed and sold, such that the claims do not arise out of BSI's "ongoing operations" as a matter of law. Additionally, one of the two policies has a self-insured retention that must be satisfied by BSI before Arch can have a duty to defend any insured, and it has not been satisfied.    Therefore, Arch does not have a duty to defend the McMillin entities in the underlying action. Without a duty to defend, Arch does not have a duty to indemnify McMillin either, nor can it be held in "bad faith." As such, this court may grant summary judgment in favor of Arch. Of course, if the court wishes not to rule on the indemnity issues because they are stayed, the court may grant summary adjudication regarding the duty to defend.

## II.    **STATEMENT OF FACTS**

### A.    **The Underlying Action**

#### 1.    **The BSI Subcontracts**

McMillin Construction Services, L.P. dba McMillin Homes entered into a master subcontract with BSI on May 5, 2003 to install entry tile, carpet and vinyl flooring at single family homes in the "Siena" development in Chula Vista, California (the "Project"). (McMillin's Initial Disclosures ("MID") at MCM0169-0218, attached as Exhibit A to the Declaration of Chital P.

---

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

1    Selvakumar ("Selvakumar Decl."), ¶3) The master subcontract required BSI to name the following

2    entities as additional insureds: "McMillin Sienna II, LLC," "McMillin Management Services, L.P.

3    dba McMillin Homes, A Corky McMillin Company," and "McMillin Construction Services, L.P.

4    dba McMillin Homes, A Corky McMillin Company." (*Id.* at MCM0188)

5         Between September 30, 2003 and December 6, 2004, BSI and McMillin entered into

6    addendums to the master subcontract for BSI to install entry tile, carpet and vinyl flooring at

7    Phases 2, 4 – 5 and 9 – 11. (*Id.* at MCM0219-0271) On May 9, 2005, BSI and McMillin entered

8    into another subcontract to install entry tile, carpet and flooring at the Project. (*Id.* at MCM0272-

9    0286) The subcontract stated that the "McMillin General Conditions, bearing Edition date of

10   October 1, 2004, are a material and integral part of this contract and all parties agree to be bound

11   by all provisions contained therein." (*Id.*)

12        Notices of Completion were issued for the litigated homes between January 5, 2004 and

13   August 30, 2005. (*Id.* at MCM0289)[1]

14        **2.    The Complaint**

15        On February 2, 2009, a construction defect action was filed against McMillin by the

16   owners of twenty (20) Project homes, styled *Aquino, et al. v. McMillin Sienna II, LLC, et al.* (San

17   Diego Superior Court Case No. 37-2009-00082562-CU-CD-CTL) ("Underlying Action"). The

18   operative complaint is the First Amended Complaint filed on April 21, 2009, by the owners of

19   eleven (11) Project homes ("Underlying Complaint"). (Request for Judicial Notice ("RJN"), ¶2,

20   Exh. B) The homeowners assert causes of action against McMillin for: (1) Strict Liability; (2)

21   Strict Products Liability; (3) Negligence; (4) Negligence Per Se; and (5) Violations of Civil Code

22   Title 7, Chapter 2, Section 896 et seq. (*Id.*)

23        The homeowners allege that McMillin was the developer of approximately 150 single-

24   family homes in Chula Vista, California. (Underlying Complaint, ¶22.) The homeowners allege

25   defects and damage in only four paragraphs - 21(F), 32, 57 and 63. (Underlying Complaint,

26   _____

27   [1]    In a letter dated April 28, 2010, McMillin's defense counsel, Leslie A. Braun, Esq. of Simpson, Delmore &
         Greene, LLP, enclosed a homeowner matrix and stated that the notice of completion dates ranged from

28   December 17, 2004 to April 3, 2005. The matrix shows the date range as January 5, 2004 to August 30, 2005.

2

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

¶¶21(F), 32, 57 and 63.)  **The homeowners do not allege defects from or damage to entry tile, carpet or vinyl flooring**. *Id.*

### 3.  Tender & Response

On July 13, 2009, McMillin's defense counsel in the Underlying Action, Leslie Braun of Simpson, Delmore & Greene LLP, sent a letter to Arch tendering the defense of McMillin under the BSI policies. (MID, MCM0383-0407) The tender letter purportedly attached the Underlying Complaint and homeowner matrix, and advised that McMillin would file a motion to stay the Underlying Action to force the homeowners through the SB800 process. (*Id.*)

In letters dated July 23, 2009 and July 24, 2009, Alex Dashevsky of Midlands Claim Administrators, Inc., the third party administrator for Arch, acknowledged receipt of the tender and requested copies of the preliminary defect list, BSI subcontract documents and a homeowner matrix with notice of completion dates. (*Id.* at MCM0368-0373; Declaration of Alex Dashevsky ("Dashevsky Decl."), ¶¶1-5) In letters dated August 19, 2009, Ms. Braun advised Mr. Dashevsky that she would provide a defect list when it became available. (*Id.* at MCM0333-0334; Dashevsky Decl.,¶¶1-5) However, a defect list was never provided. (Dashevsky Decl.,¶5)

On August 4, 2009, Arch sent a letter declining coverage under policy number GAP0000646-00 (7/15/04 – 7/15/05) pursuant to, among other things, the "Limited Blanket Additional Insured Endorsement – Deductible Version" and "Prior Completed Work-Products/Completed Operations Hazard Exclusion." (*Id.* at MCM0335-0349; Dashevsky Decl.,¶6) On February 23, 2010, Arch sent a letter declining coverage under policy number 72RGP1408900 (7/15/03 – 7/15/04) pursuant to, among other things, the $50,000 each occurrence self-insured retention and the "Limited Blanket Additional Insured" Endorsement. (*Id.* at MCM0301-0313; Dashevsky Decl.,¶7)  The letters reserved rights under other policy provisions and reserved the right to reconsider its coverage position if additional information was provided. (*Id.*)

### 4.  Current Status

On December 22, 2009, the court stayed the Underlying Action pending compliance with the SB800 process, codified at California *Civil Code* §§ 895, et seq. The stay has not yet been

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

1  lifted. (Selvakumar Decl., ¶4)

2  **B.    The Present Coverage Action**

3  On November 17, 2010, Plaintiffs filed the present coverage action against Arch and other

4  insurers. (RJN, ¶1, Exh. C) The Complaint asserts three causes of action against the defendants,

5  including Arch, for: (1) Declaratory Relief; (2) Breach of Contract; and (3) Breach of the Implied

6  Covenant of Good Faith and Fair Dealing.  Plaintiffs allege that "they are informed and believe

7  that the terms and conditions of" the Arch Policies obligate Arch to defend and indemnify

8  Plaintiffs as "additional insureds" in connection with the Underlying Action. (Complaint, ¶21.)

9  Plaintiffs allege that they have demanded defense and indemnification from the defendants, but

10  they have allegedly "failed or refused to honor their obligations." (Complaint, ¶22.)

11  On May 5, 2011, this Court granted defendants' motion to stay indemnity issues because

12  Plaintiffs conceded that their indemnity claim "is not ripe for declaratory relief now" since the

13  Underlying Action is stayed. (RJN, ¶3)

14  **C.    The Arch Policies**

15  Arch issued to BSI commercial general liability policy numbers 72RGP1408900 (7/15/03

16  – 7/15/04) and  GAP0000646-00 (7/15/04 – 7/15/05) ("Policies"). (Declaration of Malcolm

17  Ainslie, ¶3-4, Exh. D) The pertinent provisions of the Policies are set forth below.

18  **1.    Policy Number 72RGP1408900 (7/15/03 – 7/15/04)**

19  **a.    Self-Insured Retention**

20  Policy number 72RGP1408900 (7/15/03 – 7/15/04) has a $50,000 each occurrence self-

21  insured retention that must be satisfied by the named insured before Arch has a duty to defend any

22  insured. The Policy defines "you" and "your" as the Named Insured. (Ex. D, AR0004 & AR00053)

23  Section I – Coverages states, in pertinent part:

24  1.    Insuring Agreement

25      a.    We will pay those sums in excess of the "Self-Insured Retention"
26          that the insured becomes legally obligated to pay as damages
27          because of "bodily injury" or "property damage" to which this
28          insurance applies...

    b.    Rights  and  duties  relating  to  the  defense,  settlement,  and

4

518250.1  763.30213

*Selman Breitman* LLP
ATTORNEYS AT LAW

investigation of claims or "suits" to which this policy may apply are set forth in SECTION II — DEFENSE, SETTLEMENT AND INVESTIGATION OF CLAIMS AND "SUITS" (AR00053)

Section II – Defense, Settlement And Investigation Of Claims And "Suits" states, in pertinent part:

The rights and duties relating to the defense, settlement and investigation of claims or "suits" to which this policy applies are as follows:

1.   "You" and the insured have the duty to defend any "suit" and investigate any claim. "You" and the insured's duty to defend and investigate will be terminated or modified only by:

a.   our exercise of our right to assume control of the defense or investigation of any specific claim or "suit" as set forth in Paragraph 2. below;

b.   the settlement, final adjudication or other termination of such claim or "suit" as set forth in 3. below; or

c.   the assumption of the defense or investigation by another insurer or any other entity or person.

2.   We have the right at any time to assume control of the investigation, defense (including our selection and termination of attorneys) or settlement of any claim or "suit". Upon written request, **you** will tender such portion of the "Self-Insured Retention" as we may deem necessary to complete the investigation, defense or settlement of such claim or "suit"... (AR00062)

Section IV – Limits of Insurance states, in pertinent part:

This policy shall pay for those sums in excess of the 'Self-Insured Retention.'  The 'Self-Insured Retention' shall be borne by **you** and shall not be insured. (AR00064)

Section VI – Commercial General Liability Conditions states, in pertinent part:

4.   Other Insurance

c.   **Your** obligation to pay the "Self-Insured Retention" will also apply fully and separately to each policy period and will not be reduced by:

(2)   Any payment made on your behalf by another, including any payment from other applicable insurance; (AR00066)

13.   Named Insureds:

b.   Each Named Insured is jointly and severally liable for:

(2)   All obligations that arise due to the self-insured retention including claim expenses. (AR00069)

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

518250.1  763.30213

Selman Breitman LLP
ATTORNEYS AT LAW

### b. The Blanket Additional Insured Endorsement

The Policy also has a "Limited Blanket Additional Insured" endorsement limited to ongoing operations that states:

"Section III – Who Is An Insured is amended to include as an insured the person or organization as an insured where required by contract but only with respect to liability arising out of your ongoing operations." (AR00088)

### 2. Policy Number GAP0000646-00 (7/15/04 – 7/15/05)

Policy number GAP0000646-00 (7/15/04 – 7/15/05) has a "Limited Blanket Additional Insured Endorsement – Deductible Version" that states:

"Section II – Who Is An Insured is amended to include as an additional insured those persons or organizations who are required under a written contract with the Named Insured to be named as an additional insured, but only with respect to liability arising out of your ongoing operations." (AR00024)

### 3. Products-Completed Operations Hazard – Both Policies

The Policies define "products-completed operations hazard," in pertinent part, as follows:

"Products-completed operations hazard" means:

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1)   Products that are still in your physical possession; or

   (2)   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a)   When all of the work called for in your contract has been completed.

      (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. (AR00020 & AR00072)

---

6

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

**4.      Exclusions j(5) and j(6) – Both Policies**

The Policies provide Exclusions j(5) and j(6), which state:

2.      Exclusions

This insurance does not apply to:

　　　j.      Damage To Property

　　　　　"Property damage" to:

　　　　　(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

　　　　　(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

　　　　　. . .

　　　　　Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard". (AR00007 & AR00057)

The Policies define "your work" as:

"Your work":

　　a.   Means:

　　　(1)      Work or operations performed by you or on your behalf; and

　　　(2)      Materials, parts or equipment furnished in connection with such work or operations.

　　b.  I ncludes:

　　　(1)      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

　　　(2)      The providing of or failure to provide warnings or instructions. (AR00021 & AR00074)

///

///

///

7

518250.1  763.30213

III.   **LEGAL STANDARDS**

    A.   **This Court Has Authority To Grant A Motion For Summary Judgment, Or In The Alternative, Summary Adjudication**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" *Id.* at 56(c); *California v. Campbell* (9th Cir. 1998)138 F.3d 772, 780. To defeat a motion for summary judgment, the nonmoving party must demonstrate a "genuine issue of material fact." *Id.*  In so doing, it cannot rest on the allegations of its complaint but must produce admissible evidence. *Devereaux v. Abbey* (9th Cir. 2001) 263 F.3d 1070, 1076. If the nonmoving party fails to demonstrate a material issue of fact, Rule 56(c) mandates the entry of summary judgment. *Celotex Corp. v. Catrell* (1986) 477 U.S. 317, 322-23.

A court may grant summary adjudication on specific issues without granting summary judgment as to the entire cause of action so as to narrow the issues for trial. *Sebastian Intern., Inc. v. Russolillo* (C.D. Cal. 2001) 151 F. Supp. 2d 1215, 1217. A motion for partial summary judgment directed to only part of a claim for damages is procedurally proper. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D. Cal. 2001) 178 F. Supp. 2d 1099.

    B.   **Policy Interpretation Is A Question Of Law Determined By A Court**

The interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1, 18. Therefore, it is the court's responsibility to determine coverage issues. It is error to leave policy interpretation to the jury. *Garcia v. Truck Ins. Exch.* (1984) 36 Cal.3d 426, 439 (1984); *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 35.

Under the statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. *Cal. Civ. Code*, §1636; *AIU Ins. Co. v. Superior*

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

1   *Court* (1990) 51 Cal.3d 807, 821-22. Such intent is to be inferred, if possible, solely from the

2   written provisions of the contract. *Id.* at §1639. Judicial interpretation is controlled by the "clear

3   and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense." *Id.* at

4   §1644. As stated in *Kwok v. Transnation Title Ins. Co.* (2009) 170 Cal.App.4th 1562, 1571, "We

5   do not rewrite any provision of any contract, including an insurance policy, for any purpose."

6   **IV.**   **ARGUMENT**

7         **A.**     **The McMillin Entities Are Not Entitled To Coverage Under The Additional**

8                    **Insured Endorsements**

9         The Limited Blanket Additional Insured Endorsements ("AIE") in the Policies require the

10   McMillin entities to be named as such in a written contract with BSI and limit the coverage

11   provided to liability arising out of BSI's "ongoing operations." The written contract with BSI does

12   not require Plaintiff Corky McMillin Construction Services, Inc. to be named as an additional

13   insured. Therefore, it does not qualify as an additional insured. See, *Whittaker Corp. v. Allianz*

14   *Underwriters, Inc.* (1992) 11 Cal. App. 4th 1236 [the burden is on the insured to bring the claim

15   within the basic scope of coverage]. Assuming that the rest of the McMillin entities were required

16   to be named as additional insureds, Arch still has no obligation to defend them for the reasons set

17   forth below.

18               **1.**     **The Homeowners Do Not Allege "Liability Arising Out Of" BSI's**

19                          **Operations – "Ongoing" Or Otherwise**

20         The Underlying Complaint sets forth defects pertaining to various trades, but does not

21   allege defects to the entry tile, carpet or vinyl flooring installed by BSI. (Underlying Complaint,

22   ¶¶21(F), 32, 57 & 63.) Arch requested the defect list from McMillin's counsel in order to evaluate

23   potential defects from BSI's work, but a defect list was never provided. As such, the McMillin has

24   failed to show that it faces liability – ongoing or otherwise – arising out of the work of BSI. As

25   such, McMillin is not entitled to a defense to the Underlying Action by Arch.

26         Directly on point is *Monticello Ins. Co. v. Essex Ins. Co.* (2008)162 Cal.App.4th 1376,

27   which found that the subcontractor's insurer (Essex) did not have a duty to defend the general

28

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,**
**SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

1  contractor as an additional insured because "the complaint in the underlying action did not reveal a

2  possibility to Essex that the action against [the general contractor] might be covered by [the

3  subcontractor's] policy." The general contractor, Blumenfeld, built a house and subcontracted the

4  drywall work to Dana Drywall. *Id.* at 1378-1379. The homeowner filed a construction defect

5  action against Blumenfeld. The complaint alleged "[e]xcessive cracking in the interior and

6  exterior" and that there was "[p]remature failure of painted surfaces" and "[w]ater damage to

7  structure." *Id.* at 1387. The word "drywall" was not mentioned anywhere in the complaint. *Id.*

8  Blumenfeld tendered its defense to Dana Drywall's insurer, Essex, as an additional insured. Essex

9  requested "whatever information and documents you have evidencing damage as a result of Dana

10  Drywall's work and/or product and when that damage occurred." Essex declined coverage because

11  it was not provided with any information implicating Dana Drywall's work. The case settled. Six

12  months later, as part of Monticello's motion for summary judgment, a defect list was provided to

13  Essex. The court rejected Monticello's claims:

> As for the allegations in paragraph 19 of the complaint relating to "premature
> failure of painted surfaces" and "water damage to structure," the complaint did not
> allege those damages were in any way related to drywall work. Rather, the
> complaint alleged those damages were the result of various defects, including
> improper grading, inadequate drainage, and excessive cracking in the interior and
> exterior of the Goldman property. Essex was not required to speculate that the
> "premature failure of painted surfaces" and "water damage to structure" may have
> resulted from the work of Dana Drywall. Therefore, we conclude the complaint in
> the underlying action did not reveal a possibility to Essex that the action against
> Blumenfeld might be covered by Dana Drywall's policy. Given the Goldmans'
> allegations in the underlying complaint, Essex had no duty to defend Blumenfeld in
> the underlying action. *Id.* at 1387.

21  The court also rejected Monticello's argument that the defect list supported its claims,

22  because "Essex was never provided with the Defect List at any time while it still had the

23  opportunity to participate in the defense of Blumenfeld in the underlying action" *Id.* at 1387-1388.

24  The facts of the present case are similar, insofar as the Underlying Complaint does not

25  allege defects to or damage arising out of any of BSI's work (entry tile, carpentry or vinyl

26  flooring). Arch is not required to speculate that the vague defect allegations in the Underlying

27  Complaint pertain to BSI's work. *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106,

28

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

1114, [an insured may not trigger duty to defend by speculating about extraneous facts regarding potential liability]. Additionally, Arch requested a defect list from McMillin's counsel immediately upon receipt of McMillin's tender, which was never provided. As such, there are no facts to trigger a duty to defend.

Arch recognizes that the additional insured endorsement in *Monticello* did not contain the "arising out of" language in the additional insured endorsements to the Arch Policies. However, this is a distinction without significance given the complete lack of any factual predicate upon which to base a defense duty. In this regard, the seminal case construing the phrase "arising out of" in an additional insured endorsement found that it requires an incidental relationship or a broad link between a factual situation and the event creating liability. See, *Acceptance Ins. Co. v. Syufy Enterprises, et al.* (1999) 69 Cal.App.4th 321. However, "arising out of" cannot be construed so broadly as to implicate liability where it is not even alleged.

In applying the principles set forth in *Syufy*, the Court of Appeal in *St. Paul Fire & Marine Ins. Co. v. American Surplus Lines Ins. Co.* (2002)101 Cal.App.4th 1038, held that injuries to a named insured's employee did not "arise out of" the named insured's operations since they were completely unrelated to the cause. The named insured, Sasco, was an electrical subcontractor and its policy provided additional insured coverage for the general contractor, ARB. The additional insured endorsement limited coverage to "…liability arising out of [Sasco's] ongoing operations performed for [ARB]." A Sasco employee was injured when ARB was pressure testing a pipe that exploded and caused him to be injured while he was feeding electrical lines pursuant to its subcontract in a nearby location. The court held that the employee's injuries did not "arise out of" Sasco's operations because the work called for under the subcontract was not the event that led to the injury. *Id.* at 1052-53. The injury occurred from ARB's operations, which were unrelated to Sasco's electrical work under the subcontract. The employee's presence in the "zone of danger" did not create an incidental relationship. *Id.* Here, the fact that BSI may have performed work at the Project out of which the Underlying Action arose might put it in the "zone of danger," but that is insufficient, of itself, to create liability.

11

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Selman Breitman LLP
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

1    As such, McMillin has failed to show that it faces liability "arising out of" BSI's

2    operations, ongoing or otherwise. As a result, it is not entitled to coverage under the additional

3    insured endorsements.

4         **2.    The Ongoing Operations Limitation Precludes Coverage For**

5              **Completed Operations Claims**

6         Even if the Underlying Complaint alleged liability arising out of BSI's operations, which it

7    does not, the "ongoing operations" limitation would preclude coverage since the claims pertain to

8    completed operations. Arch recognizes that this Court issued an order denying co-defendant

9    Lexington Insurance Company's Motion for Partial Summary Judgment regarding the "ongoing

10   operations" issue, finding the language to be ambiguous based upon an unpublished Ninth Circuit

11   decision in *Tri-Star Theme Builders, Inc. v. One Beacon Ins. Co.* (9th Cir. (Ariz.) 2011) 2011 WL

12   1361468, even though it concerned the interpretation of Arizona law. Arch believes there are some

13   arguments and authorities this Court did not consider that would alter its conclusion and thus

14   requests they be considered.

15        To begin, there are two states in the Ninth Circuit, California and Washington, and one

16   state in the Tenth Circuit, Colorado, that find the phrase "ongoing operations" to be a clear and

17   enforceable limitation on coverage. In *Pardee Construction Co. v. Insurance Company of the West*

18   (2000) 77 Cal.App.4[th] 1340, the California Court of Appeal approved of the definition of

19   "products completed operations hazard" in the standard commercial general liability policy to

20   determine when an insured's operations "shall be deemed completed." *Id.* at 1358. The Arch

21   Policies use the same definition. *Pardee* addressed whether an additional insured general

22   contractor was entitled to coverage under the subcontractors' policies for <u>construction defect</u>

23   <u>claims</u>, where the additional insured endorsements stated that coverage was provided for "liability

24   arising out of your work" (ISO form CG 20 10 11 85). The court held that the general contractor

25   was entitled to such coverage, ***because the endorsements did not restrict coverage to ongoing***

26   ***operations.***" *Id.* at 1358. [Emphasis added] In this regard, the *Pardee* court stated that if the

27   endorsement had limited coverage to "ongoing operations," coverage would have been precluded:

28
<hr/>

12

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
SUMMARY ADJUDICATION**

"Moreover, in 1993, the Insurance Services Office (ISO) revised the language of the form 2010 endorsement utilized by the insurance industry to expressly restrict coverage for an additional insured to the 'ongoing operations' of the named insured. **This revised language effectively precludes application of the endorsement's coverage to completed operations losses**. One insurance commentator stated regarding the 1993 revisions of the standard additional insured endorsement forms: **"The restriction of coverage in the two endorsements to only ongoing operations makes it clear that additional insureds will have no coverage under the named insured's policy for liability arising out of the products-completed operations exposure..."** *Id.* at 1358. [Emphasis added.]

Similar results are found in Colorado and Washington, both of which found that the "ongoing operations" limitation is unambiguous and does not provide coverage for completed operations claims. In Colorado, the Court of Appeal found that a general contractor was not entitled to a defense for a construction defect claim under an additional insured endorsement that limited coverage to a subcontractor's "ongoing operations." See, *Weitz Co., LLC v. Mid-Century Insurance* (Colo. Ct. App. 2007) 181 P.3d 309. After noting the rules of construction, which are the same as used in California[2], the court held:

Neither "ongoing operations" nor "completed operations" is defined in the policy. However, "ongoing" is generally defined as "that [which] is going on: a: that [which] is actually in process ... b: that [which] is continuously moving forward." Webster's Third New International Dictionary 1576 (2002) ( Webster's 2002); see also Webster's Third New International Dictionary 1576 (1961) (Webster's 1961) (same); Webster's New International Dictionary 1504 (1927) (Webster's 1927) ("Act of going forward; proceeding; progress; ... doings; current events."); American Heritage Dictionary 1230 (4th ed. 2000) (defining "ongoing" as "1. Currently taking place.... 2. In process or evolving.").

By contrast, "complete" is generally defined as "[b]rought to an end or to a final or intended condition; concluded; completed; as, the edifice is complete." Webster's New International Dictionary 456 (1927) (emphasis in original) ( Webster's 1927); see also Webster's Third New International Dictionary 465 (1961) ( Webster's 1961) (same).

"Operation" is generally defined as "a doing or performing esp. of action: WORK, DEED." Webster's 2002, supra, at 1581; see also Webster's 1961, supra, at 1581

---

[2] *Weitz* at p. 312: "An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contractual interpretation. In contract interpretation, we begin by giving words used their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. Courts should not rewrite clear and unambiguous contract provisions. Dictionaries may be used to assist in the determination of the plain and ordinary meaning of words. Ambiguous terms in an insurance policy are construed against the insurer. A policy provision is ambiguous when it is reasonably susceptible of more than one meaning. Courts will not force an ambiguity in an insurance contract in order to resolve it against the insurer." [citations omitted]

DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

1   (same); Webster's 1927, supra, at 1507 (same). The term "operations" as used in
2   the policy is the plural of "operation."

3   **In our view, the policy is unambiguous as to the extent of the coverage available to the additional insured. The term "completed operations" as used in the policy extends that coverage to the subcontractor or named insured, and the term "ongoing operations" used in conjunction with "only" in the endorsement limits the coverage provided to the general contractor or additional insured. The use of different terms in the policy signals that those terms should be afforded different meanings.** [emphasis added]

7   The *Weitz* court cited to several industry articles in support of its holding, including one

8   from Richard Carris, Construction Risk Management (IRMI 2004):

9   Until 1993, the standard additional insured endorsements used in conjunction with construction operations (primarily CG 20 10) extended coverage to additional insureds for both ongoing and completed operations. **The post–1993 editions of this endorsement narrow the scope of an additional insured's coverage by limiting its application to liability arising out of the insured contractor's 'ongoing operations,'** *the [implication] of which is that additional insureds are not covered with respect to liability in connection with completed projects.*" *Id.* at 314. [Emphasis added.]

14   Washington followed Colorado and California in *Hartford Insurance Co. v. Ohio Casualty*

15   *Insurance Co.* (Wash. 2008) 145 Wash.App. 765, which held that the "ongoing operations"

16   limitation in an additional insured endorsement to a subcontractor's policy meant that the general

17   contractor was not entitled to coverage for a construction defect claim:

18   The policies do not define "ongoing operations." American States argued below that this term is to be understood as excluding completed operations. Hartford responded that the most sensible way to interpret the term was that if the property damage arose out of the ongoing operations of the subcontractor, Roosevelt was covered even if the subcontractor had completed operations before the claim was asserted. So, according to Hartford, Roosevelt's liability for a construction defect should be covered if the defect arose at the time of construction, even if it was not noticed until after project completion because the damaging effects got progressively worse over time. "In other words, it is the origin of the defect, not when the claim was made, that matters." American States replied that defining "ongoing operations" as occurring whenever the claim originated would create an ambiguity where none exists, and would provide an additional insured such as Roosevelt with "long-tail coverage beyond the ongoing operations of American States' named insureds."

26   Hartford's argument is unsupported by legal authority, whereas American States' position is supported by *Pardee Construction Co. v. Insurance Co. of the West*, 77 Cal.App.4th 1340, 1359–61, 92 Cal.Rptr.2d 443 (2000). *Pardee* discusses the evolution of language in standard insurance forms for additional insured endorsements in commercial general liability coverage. The history of these forms

28

14

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

as set forth in *Pardee* suggests that when such coverage is limited by the phrase "your ongoing operations," the endorsement evinces an intent to provide coverage to the additional insured only for liability that arises while the work is still in progress. An example of such liability would be "a course of construction work site accident involving bodily injury or property damage." *Pardee*, 77 Cal.App.4th at 1360, 92 Cal.Rptr.2d 443. Without such clearly limiting language, the coverage could be interpreted as extending to completed operations. This would allow a contractor who is an additional insured to be indemnified for damages arising from a subcontractor's work even if it is not discovered for years. *Pardee* recognizes that contractors who have insisted upon being named as additional insureds will reasonably expect to be covered for the same completed operations as their subcontractors. "Mindful such litigation is typically complex and expensive, it is reasonable to conclude the key motivation in procuring an additional insured endorsement is to offset the cost of defending lawsuits where a general contractor's liability is claimed to be derivative." *Pardee*, 77 Cal.App.4th at 1361, 92 Cal.Rptr.2d 443. The court concludes that to avoid such broad coverage for an additional insured, the insurer must draft and incorporate an express coverage limitation in the policy and endorsement language. The "ongoing operations" term is such a limitation. See also *Weitz Co., LLC v. Mid–Century Insurance. Co.*, 181 P.3d 309 (Colo.App.2007).

We find the discussion in *Pardee* persuasive. **We therefore conclude that since the additional endorsement for Roosevelt in the American States policies was limited to "ongoing operations," American States was correct in its argument that the additional insured endorsement "limited Roosevelt's coverage to property damage arising out of the subcontractors' work in progress only."** *Id.* at 777-778. [Emphasis added]

As demonstrated above, the Courts of Appeal of California, Colorado and Washington have all found the distinction between ongoing operations and completed operations easy to understand and apply. Contrast this with the decision in *Tri-Star*, where the court struggled to find an ambiguity where none existed and, in so doing, eviscerated the distinction between the terms ongoing operations and completed operations. This result did violence to the rules of policy interpretation and to the policies themselves, for several reasons. The rules governing interpretation were set forth in *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390-391:

While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs. A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. The fact that a term is not defined in the polic[y] does not make it ambiguous. Nor does disagreement concerning the meaning of a phrase, or the fact that a word or phrase isolated from its context is susceptible of more than one meaning. Language in a contract must be construed in the context of that

15

DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Selman Breitman LLP
ATTORNEYS AT LAW

instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract…

First, as found by the Courts of Appeal in California, Colorado and Washington, the phrase "ongoing operations" was clear. See, *Pardee, Weitz* and *Hartford*, supra (respectively). Second, for the *Tri-Star* court to find the phrase "ongoing operations" ambiguous, it had to find that it was "capable of two or more constructions, both of which are reasonable…*in the context of that instrument as a whole, and in the circumstances of that case...*" [emphasis added] When looking at *Pardee, Weitz* and *Hartford*, all of which addressed the purpose of commercial general liability policies like the ones before it (identical to Arch's Policies in all pertinent respects), in the context of the construction defect cases before it (as here), it found the phrase "ongoing operations" to be unambiguous. To adopt *Tri-Star*'s reasoning would re-write the Arch Policies, which this Court is prohibited from doing. See, *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 18 ["we should give effect to every provision and avoid rendering any part of an agreement surplusage."] and *Highlands Ins. Co. v. Schrillo Co.* (1986) 181 Cal.App.3d 766, 771 ["It is of course, well established that an insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume."]

Here, the homeowners in the Underlying Action are seeking recovery for damages that allegedly occurred after completion of the homes. The homeowners became aware of these defects within three years of filing their complaint in 2009, which is approximately four to five years after the homes were completed. (Underlying Complaint, ¶24.) The homeowners do not allege that anyone was injured on the jobsite, or that another subcontractor's work was damaged during the course of construction. See, *Travelers Casualty And Surety Co. v. Employers Insurance Of Wausau* (2005) 130 Cal.App.4[th] 99, 114 (fn. 6) [describing ongoing operations coverage as being "invoked when liability arises out of an injury or loss that occurs while the work or manufacturing is in progress," such as "injuries caused by a subcontractor's negligent construction of a wall that fell on a worker while the job was in progress"]. Therefore, *and assuming for the sake of argument that the complaint could be construed to include claims arising out of BSI's work in the first*

Selman Breitman LLP
ATTORNEYS AT LAW

16

518250.1  763.30213

Selman Breitman LLP
ATTORNEYS AT LAW

*instance*, the homeowners' claims are ***necessarily*** for liability arising out of BSI's "completed operations," not its "ongoing operations." See, *Maryland Casualty Co. v. Imperial Contracting Co., Inc.* (1989) 212 Cal.App.3d 712, 723  ["The risk intended to be insured [under completed operations coverage] is the possibility that the...work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or the completed work itself..."].

Based upon the foregoing, this Court may revisit its order denying Lexington's motion and rule that the express terms of the additional insured endorsements limiting coverage to "ongoing operations" are unambiguous and enforceable.

### 3. Exclusions J(5) and J(6) Preclude Coverage For Property Damage During Ongoing Operations

Even assuming that the homeowners alleged "property damage" that took place during BSI's ongoing operations, it would be precluded from coverage by exclusions j(5) and j(6). The California Court of Appeal in *Baroco West, Inc. v. Scottsdale Ins. Co.* (2002) 110 Cal.App.4th 96 held that the effect of exclusion j(5), coupled with the definition of "completed operations," was to limit coverage only to completed operations claims. In *Clarendon America Ins. Co. v. General Security Indem. Co.* (2011)193 Cal.App.4th 1311, the court held that exclusion j(5) applies to property damage that occurs while the insured is performing work/operations on the project:

> "The exclusion found in j(5) applies to works in progress. The insurer is not obligated to indemnify a policyholder for property damage that occurs while the insured is performing operations on that property. Thus, if [plaintiffs'] claims encompassed property damage that occurred while [the insured] *or its subcontractors* were performing operations on the property, no coverage would exist."] *Id.* at 1325 [Emphasis added].

Additionally, *Clarendon* stated that exclusion j(6) precludes "coverage for the physical injury to, or loss of use of, that part of the property that must be replaced because [the insured's] work was performed incorrectly." *Id.* at 1326.  The court rejected an argument that the insured's work could have damaged the work of other subcontractors because "[t]he list of observed defects and deficiencies that the [plaintiffs] attached to their complaint against [the insured] does not

17

1   reference any damage to the work of others, it simply lists faulty work which must be repaired or

2   replaced." *Id.*   As such, claims for any defects or deficiencies to BSI's work during ongoing

3   operations would be precluded from coverage by exclusions j(5) and j(6).

4       **B.**   **BSI Has Not Satisfied The Self-Insured Retention For Policy Number**

5          **72RGP1408900 (7/15/03 – 7/15/04)**

6       It is well settled in California that a policy's self-insured retention ("SIR") must be satisfied

7   before an insurer's duties incept. See, *General Star Indem. Co. v. Sup. Ct.* (1996) 47 Cal.App.4[th]

8   1586. Here, the SIR under policy number 72RGP1408900 (7/15/03 – 7/15/04) has not been

9   satisfied. (Dashevsky Decl. ¶8). In this regard, the SIR can only be satisfied by BSI.

10       The Policy states, at Section IV – Limits of Insurance that "[t]he 'Self-Insured Retention'

11   shall be borne by **you** and shall not be insured."  This sentence and the other policy provisions

12   recited above clearly and unambiguously demonstrate that the SIR must be paid by BSI and

13   cannot be satisfied by McMillin or another insurer. California courts have upheld provisions

14   requiring that a SIR be satisfied only by the named insured. See, *Forecast Homes, Inc. v. Steadfast*

15   *Ins. Co.* (2010) 181 Cal.App.4[th] 1466 [liability policies defining "you" and "your" as referring to

16   the named insured only and stating that "you" must satisfy the SIR, unambiguously prohibited

17   anyone other than the named insured from satisfying the SIR and were not unenforceable as

18   contrary to public policy]. Because BSI has not satisfied the SIR, Arch has no obligation to defend

19   BSI or McMillin under this Policy.

20       **C.**   **A Bad Faith Cause Of Action Cannot Be Maintained Without A Breach Of**

21          **Contract.**

22       A bad faith claim cannot be maintained unless policy benefits are due. *Love v. Fire Ins.*

23   *Exchange* (1990) 221 Cal.App.3d 1136, 1153.  For the reasons stated above, policy benefits are

24   not due to McMillin.  There is no breach of the Policies because Arch did not have a duty to

25   defend under the additional insured endorsements.  For this reason, there can be no breach of the

26   implied covenant of good faith and fair dealing either.

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1  763.30213

18

**DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**D.** **Though The Court Stayed The Indemnity Issues, A Determination That Arch Has No Duty to Defend Eliminates An Alleged Duty To Indemnify**

As shown above, Arch does not have a duty to defend McMillin. Since there is no duty to defend, there cannot be a duty to indemnify. See, *Certain Underwriters of Lloyd's, London v. Superior Court* (2001) 24 Cal.4th 945, 958 ["Where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend there cannot be a duty to indemnify."] As such, this court may grant summary judgment that Arch cannot have a duty to indemnify McMillin, based upon its finding that Arch does not have a duty to defend it.

**V.** **CONCLUSION**

Based on the foregoing, Arch is entitled to summary judgment because there is no genuine dispute of material fact regarding Arch's duty to defend. McMillin does not qualify as an additional insured because the homeowners do not allege "liability arising out of" BSI's operations – "ongoing" or otherwise. As such, there is no causal connection that triggers a defense obligation under the additional insured endorsements. Moreover, the alleged construction defects are to homes that were completed and sold, such that the claims do not arise out of "ongoing operations" as a matter of law. Additionally, the SIR, which must be paid by BSI, has not been satisfied, such that Arch has no duty to defend any insured under that policy. Therefore, Arch does not have a duty to defend the McMillin entities in the Underlying Action. Without a duty to defend, Arch does not have a duty to indemnify McMillin either, nor can it be held in "bad faith." As such, this court may grant summary judgment in favor of Arch. Of course, if the court wishes not to rule on the indemnity issues because they are stayed, the court may grant summary adjudication regarding the duty to defend.

DATED: February 3, 2012          SELMAN BREITMAN LLP


By:   */s/ Gregory J. Newman*
          GREGORY J. NEWMAN
          CHITAL P. SELVAKUMAR
     Attorneys for Defendant
     ARCH SPECIALTY INSURANCE COMPANY

DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Selman Breitman LLP
ATTORNEYS AT LAW

518250.1 763.30213

Selman Breitman LLP
ATTORNEYS AT LAW

1

### CERTIFICATE OF SERVICE

2   *McMillin Construction Services, L.P., et al. v. Arch Specialty Insurance Co., et al.*

3   Case No. 10 CV 2592 DMS MDD

4   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

5   I am employed in the County of Los Angeles, State of California.  I am over the age of 18
years and am not a party to the within action; my business address is 11766 Wilshire
6   Boulevard, Sixth Floor, Los Angeles, CA 90025.  On February 3, 2012, I served the
following document(s) described as DEFENDANT ARCH SPECIALTY INSURANCE
7   COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY
8   ADJUDICATION on the interested parties in this action as follows:

9   ☒       **BY ELECTRONIC FILING AND SERVICE with the Clerk of the Court using
the CM/ECF System**:  in accordance with the F.R.C.P.5(b)(2)(D) and the above
10   Court's Local Rules, I electronically filed the foregoing with the Clerk of the Court
for the United States District Court by using the CM/ECF system.  Participants in
11   the case who are registered CM/ECF users will be served by the CM/ECF system:

12

13   Greg J. Ryan, Esq.                          Attorneys For Plaintiffs, MCMILLIN
LAW OFFICES OF GREG J. RYAN, APLC           CONSTRUCTION SERVICES, L.P.;
1010 Second Avenue, Suite 2500              MCMILLIN MANAGEMENT
14   San Diego, CA  92101                        SERVICES, L.P.; CORKY MCMILLIN
CONSTRUCTION SERVICES, INC.
15
Tel:   (619) 239-4848
16                                              Fax:   (619) 239-8858
Email:  greg@gjryan.com
17

18   David S. Blau, Esq.                         Attorneys For Defendant, AMERICAN
James Whitemyer, Esq.                        SAFETY INDEMNITY COMPANY
19   BLAU & ASSOCIATES, P.C.
6080 Center Drive, Suite 550                Tel:   (310) 410-1900
20   Los Angeles, CA  90045                      Fax:   (310) 410-1901
Email:  James@blaulaw.net
21

22   Ramiro Morales, Esq.                        Attorneys For Defendants, ST. PAUL
Laura Jane Coles, Esq.                       MERCURY INSURANCE COMPANY
23   MORALES FIERRO & REEVES                     and ILLINOIS UNION INSURANCE
2300 Contra Costa Blvd., Suite 310          COMPANY
Pleasant Hills, CA  94523
24
Tel:   (925) 288-1776
25                                              Fax:   (925) 288-1856
Email:  rmorales@mfrlegal.com
26                                                      lcoles@mfrlegal.com

27

28

492537.1  763.30213

1

Selman Breitman LLP
ATTORNEYS AT LAW

1

2  Mary P. McCurdy, Esq.
   Maryam Gilak, Esq.
3  MCCURDY & FULLER LLP
   4300 Bohannon Drive, Suite 240
4  Menlo Park, CA  94025

5

6

7

Attorneys For Defendants, AMERICAN
INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY and
LEXINGTON INSURANCE COMPANY

Tel:    (650) 618-3500
Fax:    (650) 618-3599
Email:
mary.mccurdy@mccurdylawyers.com
maryam.gilak@mccurdylawyers.com

8  I declare that I am employed in the office of a member of the bar of this court at whose
9  direction the service was made.

10  Executed on February 3, 2012, at Los Angeles, California.

11

12                                              JOYCE PATTERSON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28